IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LA MECIA ROSS-TIGGETT, | |
| Plaintiff, | |
| v. | HONORABLE JEROME B. SIMANDLE |
| REED SMITH LLP, DIANE BETTINO, CAROLYN MARIANO, DENISE PAPANIER, KELLIE LAVERY, ESQ., LAURA CONROY, ESQ., FLEMING WARE, ESQ., CHRISTINE PHILLIPS, GREYSON VAN DYKE, MEGAN CICHON a/k/a MEGAN MANTIS, KRISTINE CAMARDA, MARIA FRIAS, JOHN DOES 1-100, and JANE DOES 1-100, | Civil Action No. 15-8083 (JBS-AMD) **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

This is an employment discrimination case filed by pro se Plaintiff La Mecia Ross-Tiggett, who was fired shortly after being promoted to a paralegal position at Reed Smith LLP. Ross-Tiggett, who is a forty-two year old African American, was first hired as a temporary employee at the Princeton, New Jersey office of Reed Smith, and worked there for approximately two years before her termination.

Ross-Tiggett names Reed Smith LLP and eleven of its employees as Defendants in this case. The individual Defendants include the managing partner of the firm's Princeton office,

five paraprofessionals or administrative support staff, three current or former attorneys,[1] and three human resource professionals.

Plaintiff's Amended Complaint[2] contains a myriad of federal and state claims. In addition to various claims for race and age discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the New Jersey Law Against Discrimination ("LAD"), she alleges that Reed Smith and specifically named employees violated the Equal Pay Act, the Family and Medical Leave Act ("FMLA"), the New Jersey Family Leave Act ("NJFLA"), and the New Jersey Conscientious Employee Protection Act ("CEPA").

All Defendants have moved for sanctions against Ross-Tiggett under Fed. R. Civ. P. 11 [Docket Item 5], and the eleven individual Defendants have additionally moved to dismiss [Docket Item 12] the claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted [Docket Item 9]. Defendant Reed Smith has not filed a motion to

---

[1] One defendant, Fleming Ware, Esq., was an associate attorney at Reed Smith during the relevant time period but is no longer employed by the firm.
[2] Plaintiff amended her complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B) 20 days after Defendants filed their first motion to dismiss [Docket Item 4].

2

dismiss and all claims against them are therefore still ripe for review and will not be addressed by the Court.

For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion to dismiss. The Court will permit the LAD-based claim of discrimination against Phillips to proceed, but will dismiss all other claims against the individual Defendants. The Court will also deny Defendants' motion for sanctions. The Court finds as follows:

**A. Background[3]**

1.   Plaintiff was hired by Reed Smith in April of 2012 as a temporary employee. (Am. Compl. ¶ 27.) At the time she was hired and during her tenure, the Princeton office of Reed Smith employed no junior, mid-level, or senior African American associates, paralegals, paraprofessionals, or law clerks. (Id. ¶ 29.)

---

[3] The facts alleged are drawn from Plaintiffs' Amended Complaint [Docket Item 9], exhibits attached to the Complaint, or undisputedly authentic documents upon which Plaintiffs explicitly rely in their Complaint. See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) ("When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). For purposes of this motion, the Court must accept Plaintiffs' allegations as true.

2.   On July 20, 2012, Plaintiff was offered a full-time position as a non-billable Client Services Specialist. (Id. ¶ 30.) Her performance reviews in this position were good; on a scale of 1-5, she received scores of 4 or 5. [Docket Item 31.]

3.   At the same time, Plaintiff expressed interest in advancing at Reed Smith to higher positions. She took several Reed Smith University courses to prepare herself for an advancement. (Id.)

4.   Plaintiff worked as a non-billable Client Services Specialist for approximately two years before being promoted to the position of Paralegal I in July of 2014. (Id. ¶ 37.)

5.   Plaintiff alleges that during those two years, Defendant Megan Cichon, a white female who is younger than Plaintiff and with less experience, was hired for a billable Client Service Specialist position and was promoted to Paralegal in February of 2014, approximately 13 months after her hire. (Id. ¶¶ 31, 33.) Also during those two years, Defendant Maria Frias, a Latina female who is younger than Plaintiff and with less experience, began working at Reed Smith and was promoted to replace Cichon as a billable Client Service Specialist approximately one year later. (Id. at ¶ 36.) Likewise, Defendant Greyson Van Dyke, a white male who is younger than Plaintiff with less experience, was hired as a temporary employee and was promoted to a Paraprofessional position in September of 2013 at

4

the end of his temporary assignment. Both Cichon and Van Dyke's promoted positions were more highly paid than Plaintiff's position. (Id. ¶¶ 34, 35.)

6.   Shortly after being promoted to paralegal, during a weekly paralegal meeting on July 30, 2014, Plaintiff was told by Defendant Christine Phillips, a paralegal at Reed Smith and Plaintiff's "local paralegal supervisor," that a document production assignment that was assigned to Plaintiff was being reassigned to Van Dyke. Phillips asked Plaintiff to stay behind after the meeting and told Plaintiff that she seemed like she was "walking around with an attitude." (Id. ¶ 39.)

7.   Plaintiff later followed up with Phillips, who told her that "everything was good and that there were no issues." However, when Plaintiff returned from vacation in August, she found that many of her assignments were reassigned to other paralegals without warning or explanation to Plaintiff. (Id. ¶ 40.)

8.   Plaintiff asked Phillips numerous times about her performance, and Phillips told Plaintiff to "stop asking, you're doing fine." (Id. ¶ 42.)

9.   On August 15, 2014, Plaintiff alleges she was called into a meeting with Defendant Denise Papanier, Reed Smith's Human Resources Manager, and two other supervisors not named in

the Complaint "to discuss alleged performance issues." (<u>Id.</u> ¶ 42.)

10.   Before the meeting began, Plaintiff contacted Defendant Mariano to make her aware of the situation and forwarded a formal complaint of harassment. (<u>Id.</u>)

11.   Plaintiff was told of various performance issues, including not accurately recording her time; vague communication regarding when she would be working and when she would be coming in late or leaving early; billing hours during her planned vacation when she was told not to work; taking too long to complete assignments; and leaving her office door closed too often.

12.   Plaintiff counters each of these critiques in detail and describes how in each of these the negative comments were inaccurate or otherwise incorrect. She further alleges that none of her colleagues who were white received these criticisms for similar behavior. (<u>Id.</u> ¶¶ 44-72.)

13.   On October 2, 2014, Plaintiff discovered that she was locked out of all documents related to a case she had worked on for the past two years and had been removed from that workgroup. (<u>Id.</u> ¶ 73.)

14.   Shortly thereafter, she was given an interim review which contained feedback from several attorneys and team members, including Defendants Diane Bettino, the Princeton, New

6

Jersey office's Managing Partner; Laura Conroy, Esq.; Kellie
Lavery, Esq.; Fleming Ware, Esq.; Kristine Carmarda, Legal
Secretary; Phillips, Cichon, Frias, and Van Dyke. The review
contained numerous negative comments: Plaintiff did not follow
set protocol for completing projects; spent too much time on
certain projects and asked questions not relevant to the issues
in the case; needed to develop more technical skills; created
other work that was not assigned to her; needed to improve her
time management skills; and had trouble meeting deadlines and
prioritizing assignments. There were also concerns about the
quality of Plaintiff's work product.

15.  Plaintiff again describes in detail how each of these
comments were inaccurate or otherwise incorrect. She states, for
example, that she was careful and detailed in her work and
points out several instances in which she completed her
assignments early or on time. She also alleges that her
colleagues who were white made similar mistakes, had trouble
keeping up with deadlines, and had time management issues, but
were not critiqued as harshly, were not placed on probation, and
were not taken off workgroups. (Id. ¶¶ 75-152.)

16.  Beginning in October of 2014, Plaintiff was placed on
a Performance Improvement Plan, and her billable work was taken
away and replaced with non-billable administrative work. (Id. ¶
153.)

17.   Approximately two months later, in December of 2014, Reed Smith created a job posting for a Paralegal position in Plaintiff's department. (Id. ¶ 153.)

18.   On June 9, 2015, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") for discrimination, disparate treatment, and retaliation based on race, color, gender, age, and religion. Defendants were aware of Plaintiff's complaint with the EEOC and had "numerous counseling sessions with [Plaintiff] to discover what information had been relayed to the EEOC." (Id. ¶¶ 24-25.)[4]

19.   Beginning June 22, 2015 and for approximately the next five months, Defendants restricted Plaintiff's access to Reed Smith's computer system and placed limits on the size of the emails Plaintiff could send. (Id. ¶ 153.) In August, Mariano emailed Plaintiff and asked that she return all client confidential documents in her possession, noting that if she did not return them, she would be subject to discipline and termination. (Id.)

20.   On September 11, 2015, Plaintiff emailed Michele Reasoner, who is not a defendant in this case, requesting FMLA leave so that she could take her daughter to the doctor. The

---

[4] Plaintiff's charge was ultimately dismissed and she received a Right to Sue letter on August 11, 2015. This action was filed within 90 days of that letter.

Benefits Coordinator, Bonita Fenoglietto, who is also not a defendant in this case, responded via email that she would review Plaintiff's FMLA request "pending receipt of the FMLA certification from your daughter's other doctor." She also noted, "I am assuming [the] appointment tomorrow is related to the condition described in the original FMLA certification? If so, then tomorrow's appointment is approved as FMLA time." (Id. ¶ 153; FMLA emails [Docket Item 9-17, at 12-15].)

21. Plaintiff alleges that her FMLA request was never approved. (Compl. ¶ 153.)

22. In October, Plaintiff received an email from Reed Smith stating that Reed Smith had investigated her claims of discrimination and retaliation "based on race, age and religion" and had concluded that no unlawful workplace conduct had occurred. (Compl. ¶ 153; Oct. 7, 2015 email [Docket Item 9-17, at 19].)

23. Plaintiff filed her Complaint in this case approximately one month later, on November 16, 2015. [Docket Item 1.] The next day, on November 17, 2015, she was placed on administrative leave with pay. (Id. ¶ 153.) Around that time, Defendants also hired a candidate for the paralegal position in Plaintiff's department they had advertised. (Compl. ¶ 153.)

24. Plaintiff was fired from her job on January 15, 2016. (Id.)

**B. Motion to Dismiss**

25.   Before addressing Defendants' motion to dismiss all of Plaintiff's claims against the eleven individual Defendants, the Court must first untangle the claims to determine which ones are asserted against the individual Defendants.

26.   Plaintiff's Amended Complaint contains 27 separate claims, some asserted against Reed Smith only, some asserted against individual Defendants only, and some asserted against all parties. She alleges claims under Title VII of the Civil Rights Act ("Title VII") (Counts 1-5), the New Jersey Law Against Discrimination ("LAD") (Counts 13-18, 20-23), the Age Discrimination in Employment Act ("ADEA") (Counts 6-10), the Equal Pay Act (Counts 11 & 19), the New Jersey Conscientious Employment Protection Act ("CEPA") (Count 24), the Family and Medical Leave Act (Count 12), and the New Jersey Family Leave Act ("NJFLA") (Count 25), along with a claim for Negligent Retention and/or Supervision (Count 26), and a claim under "New Jersey's Public and Private Defamation Statute" (Count 27).

27.   The individual Defendants have now moved to dismiss all claims asserted against them. (Mot. to Dismiss [Docket Item 17].)  Reed Smith has not filed a motion to dismiss and all claims asserted against them are therefore not subject to dismissal and remain alive.

28.   In her opposition to the individual Defendants' motion to dismiss [Docket Item 31], Plaintiff noted that the following claims were alleged only against Defendant Reed Smith: defamation, negligent retention and/or supervision, disparate treatment in hiring and promotion, the Equal Pay Act, and CEPA. (Opp'n to Mot. to Dismiss, at 18, 19, 20, & 22.). These claims are therefore not at issue in this opinion. (Counts 11, 13, 16, 19, 24, 26, & 27.)

29.   Nor are the individual Defendants liable for violations under Title VII, the ADEA, or the NJFLA. Defendants argued in their dismissal motion – and Plaintiff conceded in opposition – that Title VII, the ADEA, and the NJFLA do not provide for individual liability. (Mot. to Dismiss, at 12; Opp'n to Mot. to Dismiss, at 18.) The Court agrees that there is no individual liability under these statutes. See, e.g., Parikh v. UPS, 491 Fed. App'x 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability."); Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d Cir. 2006) ("Hill did not bring an ADEA claim against Mayor Marino himself, nor could he have because the ADEA does not provide for individual liability."); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII."); De Santis v. New Jersey Transit, 103 F. Supp. 3d 583, 589-90 (D.N.J. 2015)

(holding that there is no individual liability under either the
ADEA or Title VII); Gretzula v. Camden Cnty. Tech. Schs. Bd. of
Educ., 965 F. Supp. 2d 478, 485-85 (D.N.J. 2013) (Simandle, J.)
("Third Circuit jurisprudence is clear that Title VII does not
subject individual supervisory employees to liability."); Fisher
v. Schott, No. 13-5549, 2014 WL 6474216, at *6 (D.N.J. Nov. 19,
2014) (finding that "individual liability does not exist as a
matter of law under the NJFLA" because of "the more limited
definition of 'employer' under the NJFLA"); Stone v. Winter
Enters., P.C., No. 12-465, 2012 WL 6155606, at *5 (D.N.J. Dec.
11, 2012) (dismissing plaintiff's NJFLA claim against a
defendant in her individual capacity because, unlike the FMLA,
the NJFLA statute's definition of "employer" was narrow and did
not include persons acting for an employer, and court could find
no New Jersey cases that imposed individual liability under the
NJFLA).

      30.   To the extent certain individuals are being sued in
their official capacity, any claim against them is in effect a
claim against the firm itself. See, e.g., Gretzula, 965 F. Supp.
2d at 486 ("Naming a supervisor as a defendant in his or her
official capacity is redundant especially when, as in this case,
the employer is named as a Defendant."); Schanzer v. Rutgers
Univ., 934 F. Supp. 669, 678 n.12 (D.N.J. 1996) (explaining that
"it is irrelevant whether that person was acting in an official

                              12

or individual capacity, for a Title VII suit may not be properly maintained against the individual"). Accordingly, the individual defendants will be dismissed from the Title VII, ADEA, and NJFLA claims. (Counts 1-10 & 25.)[5]

31.  The nine claims that remain against the individual Defendants fall into two categories: (1) a claim against the Director of Human Resources, Carolyn Mariano, for a violation of the FMLA (Count 12); and (2) various state law claims under the

---

[5] Although the Title VII, the ADEA, and the NJFLA does not provide for individual liability, the Defendants' conduct might still be imputed to Reed Smith through the doctrine of *respondeat superior*. Title VII and the ADEA, for example, use the term "employer" to encompass its agents, who may be individual persons. See, e.g., 29 U.S.C. § 630(b)(1)("The term ["employer"] also means (1) any agent of such a person"); 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."). Thus, while the individual Defendants named in the Complaint may not be held personally liable, Reed Smith may still be vicariously liable for the actions of certain named Defendants who qualify as "agents" or supervisors. See DeSantis v. New Jersey Transit, 103 F. Supp. 3d 583, 590 (D.N.J. 2015) (noting that "the inclusion of agents in the definition of employer was probably meant only to create *respondeat superior* liability, not to subject the agents themselves to personal liability," and concluding that "individuals who do not otherwise meet the definition of an 'employer' may not be held liable under the ADEA.") The particular question of which Defendants' actions may be imputed to Reed Smith, however, is not before the Court today, nor does it affect the dismissal of the individual Defendants from these claims.

LAD for race and age discrimination (Counts 14, 15, 17, 18, & 20-23).[6]

32. When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

33. Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Iqbal, 556 U.S. at 678. The complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the

---

[6] These claims are also asserted against Defendant Reed Smith but since Reed Smith has not filed a motion to dismiss, they will not be addressed here.

14

defendant is liable for the misconduct alleged." Id. "If the
well-pleaded facts do not permit the court to infer more than
the mere possibility of misconduct, the complaint has alleged –
but it has not shown – that the pleader is entitled to relief."
Id. at 679 (internal quotation marks and citation omitted).

34.  Plaintiff alleges that Defendant Mariano violated her
rights under the FMLA because she denied Plaintiff's request for
FMLA leave. With respect to the LAD claims, Plaintiff alleges
(1) discrimination in treatment and conditions of employment,
wage disparity, demotion, and discharge (Counts 14, 15, 17, 18,
20, & 23); (2) retaliation based on Plaintiff's filing of a
harassment complaint (Count 21); and (3) hostile work
environment (Count 22). These claims are asserted against all
eleven individual Defendants, including three supervisors
(Mariano; Bettino, and Papanier), three attorneys (Lavery, Laura
Coroy, and Ware), and five paraprofessionals and support staff
(Phillips, Cichon; Van Dyke; Camarda, and Frias).

35.  Defendants argue that Plaintiff's LAD claims must be
dismissed because the allegations do not reasonably raise any
inference of discriminatory conduct by individual Defendants,
and because most of the individual Defendants were not
Plaintiff's "supervisors" under the NJLAD. They also argue that
the FMLA claim must be dismissed because Mariano was not
responsible for approving Plaintiff's FMLA request, and because

her FMLA claim was not denied. (See Mot. to Dismiss, at 11-17; Reply in Support of Mot. to Dismiss, at 6-18.)

### 1. FMLA claim

36. The Court begins with Plaintiff's claim under the FMLA, and holds that Plaintiff has not stated a plausible cause of action under the FMLA against Mariano.

37. 29 U.S.C. § 2615(a)(1) of the Family Medical Leave Act prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" that the FMLA guarantees. To assert a claim for interference under the FMLA, an employee need only to show that "he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. Moreover, it is well-settled in the Third Circuit that "individual liability is available under the FMLA," Haybarger v. Lawrence Cnty. Adult Probation and Parole, 667 F.3d 408, 414 (3d Cir. 2012). Individuals "'acting in the interest of an employer' may be held individually liable for any violations of the requirements of the FMLA." 29 C.F.R. § 825.104(d). Thus, Plaintiff may in theory assert an FMLA claim against Mariano in her individual capacity.

16

38.   Plaintiff's claim, however, must be dismissed for the simple reason that Mariano does not appear to have been involved in the alleged denial of Plaintiff's FMLA request. According to Plaintiff's own documentation, Plaintiff sent her FMLA request to Michele Reasoner, and copied Joann Winterle, Beth Weller, and Janet Sullivan, none of who are defendants in this case. Plaintiff received a response to her FMLA request from Bonita Fenoglietto, a benefits coordinator, who is also not named as a defendant. Plaintiff forwarded her email request to Mariano so that Mariano could be "aware" of her request, but there is no indication that Mariano participated in the decision to grant or deny Plaintiff's request for FMLA leave. (See FMLA emails [Docket Item 9-17], at 12-17.) Nor does Plaintiff allege anything in her Complaint about Mariano's involvement. Because the facts do not reasonably suggest that Mariano played a role in denying Plaintiff's request for FMLA leave, the Court will dismiss this claim against Mariano.[7]

---

[7] Nor is it apparent from Plaintiff's Complaint that her FMLA request was in fact denied. Fenoglietto's email stated that she would approve Plaintiff's request "pending receipt of the FMLA certification from your daughter's other doctor." While Plaintiff asserts that that her request was denied, there is no indication from the voluminous set of documents and emails she attaches to her Complaint that she ever provided Fenoglietto with the FMLA certification, nor does she allege this fact. Because the allegations in Plaintiff's pro se Complaint must be read liberally, however, and because all reasonable inferences must be made in Plaintiff's favor at the motion to dismiss

## 2. LAD Claims

39.   Unlike its federal counterpart, the New Jersey Law Against Discrimination does impose individual liability. The LAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act." N.J.S.A. § 10:5-12(e). Although personal liability under the LAD arises under the language of "aiding and abetting," New Jersey courts have held that an individual "can aid and abet, not only the conduct of another person, but that person's own conduct." DeSantis v. New Jersey Transit, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) (citing Cicchetti v. Morris Cnty. Sheriff's Office, 947 A.2d 626, 645 (2008)). To hold an employee liable as an aider and abettor, a plaintiff must show that (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. Cicchetti, 947 A.2d at 645 (citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).

---

stage, the Court assumes the truth of Plaintiff's allegation, and will decline to dismiss her FMLA claim on this ground.

40.   An NJLAD plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Sgro v. Bloomberg L.P., 331 Fed. App'x 932, 937 (3d Cir. 2009). The plaintiff bears the initial burden of setting forth sufficient facts to establish a prima facie case for discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802); Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281-82 (3d Cir. 2001); Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997).

41.   Plaintiff has alleged sufficient facts to give rise to an inference of discrimination. The burden of establishing a prima facie case of discrimination is "not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). At the pleading stage, a plaintiff needs to allege only enough facts to "raise a reasonable expectation that discovery will reveal evidence of" each necessary element. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556 (2007)).

42.   Plaintiff has done so here. According to the
Complaint, Plaintiff was only the second African American hired
to work at Reed Smith's Princeton, New Jersey's office. She
alleges that despite her qualifications, excellent performance
reviews, and longer tenure at the firm, other younger, white
employees with less experience were promoted over her to the
position of paralegal. Plaintiff was ultimately promoted to a
paralegal position, and she provides numerous detailed examples
to show that she was in fact a careful and conscientious
employee, that she completed many assignments on time, and that
she was qualified for the paralegal position. Despite being
qualified for the position, Plaintiff was taken off workgroups
with billable matters, placed on probation approximately four
months into her new position, and ultimately terminated.
Plaintiff also alleges that her colleagues who were younger and
white made similar mistakes, had trouble keeping up with
deadlines, and had time management issues, but were not
critiqued as harshly, were not placed on probation or taken off
certain matters, and did not otherwise suffer any adverse
employment actions. Accepting these allegations as true,
Plaintiff's allegations are more than sufficient to show a prima
facie case of discrimination at this stage of the litigation.

43.   The Court further finds that Plaintiff has
sufficiently alleged individual liability with respect to

Phillips. Although her Complaint does not specify Phillips'
exact supervisory role, the allegations suggest that Phillips
determined Plaintiff's work assignments. Plaintiff avers that
Phillips excluded Plaintiff from certain client cases, "locked"
Plaintiff out of workgroups, and denied Plaintiff access to
documents while giving assignments to other younger, white
employees.

44. Plaintiff has not alleged sufficient facts for
individual liability with respect to the remaining Defendants.
An individual employee can only be found liable if "actively
involved in the discriminatory conduct." Jones v. Jersey City
Med. Center, 20 F. Supp. 2d 770, 774 (D.N.J.1998) (citing Tyson
v. CIGNA, 918 F.Supp. 836, 841 (D.N.J.1996)). With respect to
the individual supervisory Defendants Bettino, Mariano, and
Papanier, the Complaint does not contain any specific
allegations to suggest that they were directly involved in the
adverse employment actions. The Complaint does not specify their
direct supervisory roles, nor does it state that these three
individuals had the power to determine Plaintiff's work
assignments or place her on probation and the Performance
Improvement Plan. Nor does it state that these individuals were
responsible for making the decision to place Plaintiff on
administrative leave and to ultimately terminate her. Similarly,
there are no allegations to suggest that the associates and co-

workers Plaintiff names in her Complaint had authority or played
an active role in these actions.[8]

45.  Similarly, while Plaintiff has stated a claim for
retaliation under the LAD,[9] the Complaint is devoid of any facts

---

[8] The Complaint suggests only that these individuals participated
in her performance review and gave her negative comments, while
she received positive reviews from other individuals. However,
"[t]he mere existence of positive evaluations by a supervisor
does not give rise to the inference that negative evaluations
from another supervisor were a pretext." Hunter v. Rowan
Univ., 299 Fed. App'x 190, 195 (3d Cir. 2008). There are no
facts in the Complaint from which to infer that these
individuals discriminated against Plaintiff based on her race
and age, and that the negative reviews were merely a pretext for
discrimination.

[9] To establish that an unfavorable job action is based upon an
illegal retaliatory motive a plaintiff must first establish a
prima facie case of retaliation by showing that (1) she was
engaged in protected activity; (2) she was subject to a
materially adverse employment action; and (3) there is a causal
link between the protected activity and the subsequent adverse
job action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41
(3d Cir. 2006). Here, the Complaint alleges that Plaintiff filed
her complaint with the EEOC in June of 2015, and that soon after
in that same month, Defendants restricted her access to Reed
Smith's computer system, making it difficult for her to complete
the work she was previously assigned. In August 2015,
approximately three months after her EEOC complaint was filed,
she was asked to return all client confidential information and
was unable to perform substantive billable work. Plaintiff also
alleges that she was placed on administrative leave one day
after she filed her Complaint in this Court. "Where the temporal
proximity between the protected activity and the adverse action
is 'unusually suggestive,' it may be sufficient by itself to
create an inference of causality." Dicks-Kee v. New Jersey
Judiciary, No. 12-6620, 2014 WL 7339458, at *9 (D.N.J. Dec. 23,
2014) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503
(3d Cir. 1997)); see also Schatzman v. Martin Newark Dealership,
Inc., 158 F.Supp.2d 392, 403 (D. Del. 2001) (noting that "courts
are quick to draw an inference of causation" where the
alleged retaliation "occurs only a short time after the employer
receives notice of an employee's protected activity"). The close

to suggest that one of the individual Defendants was directly
responsible for the retaliatory conduct Plaintiff complains of –
specifically, limiting her email and client access after she
filed her EEOC complaint, and placing her on administrative
leave after she filed her complaint in this Court. Accordingly,
the Court will dismiss the retaliation-based LAD claims against
the individual Plaintiffs.

46. In addition, the Court will dismiss Plaintiff's
hostile work environment claim. To establish a hostile working
environment claim against an employer, a plaintiff must prove,
among other things, that she suffered intentional discrimination
that was "severe" or pervasive enough" to make a reasonable
person believe that the conditions of employment have been
altered and that the working environment is hostile or abusive."
Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 625 (N.J. 2002).
The "sine qua non of a hostile work environment claim is a
'workplace . . . permeated with discriminatory intimidation,

---

temporal proximity here qualifies as "unusually suggestive
timing," and provides a causal link between Plaintiff's
protected activities – the filing of discrimination complaints –
and the adverse employment actions. See, e.g., Lichtenstein v.
Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012)
(termination less than a week after the plaintiff invoked her
right to FMLA leave was sufficient to establish causation);
Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding
inference of causation where less than two days elapsed between
the plaintiff's termination and the date his employer was put on
notice of his protected activity).

ridicule, and insult, that is sufficiently severe or pervasive
to alter the conditions of the victim's employment and create an
abusive working environment[.]'" McKinnon v. Gonzales, 642 F.
Supp. 2d 410, 421 (D.N.J. 2009) (quoting Nat'l R.R. Passenger
Corp. v. Morgan, 536 U.S. 101, 116 (2002)).

47.  The allegations in this case do not indicate that
Plaintiff suffered from severe or pervasive ridicule or
discriminatory insults at work. Indeed, the Court is hard-
pressed to find even a single example in Plaintiff's Complaint
of a particular comment made by an individual Defendant that was
hostile, abusive, or intimidating. The Court will accordingly
dismiss the hostile work environment claim.

48.  The only remaining defendants in this case are unnamed
John Doe and Jane Doe Defendants. (See Am. Compl.) There is
nothing before the Court or on the docket to suggest that
Plaintiff has identified and named these individuals, and it
follows that there is no indication that they were ever served
with the Complaint or Amended Complaint. The time for service
under Fed. R. Civ. P. 4(m) has long expired,[10] and Plaintiff has
not moved to extend time for service, nor has she demonstrated
good cause for failing to effectuate service within the

---

[10] Plaintiff's Amended Complaint was filed on January 28, 2016.
The 90-day period of Rule 4(m), Fed. R. Civ. P., expired on
Wednesday, April 27, 2016.

specified time limit. See McCurdy v. Am. Bd. of Plastic Surgery,
157 F.3d 191, 196 (3d Cir. 1998). Moreover, the Court does not
have the ability to direct service on these unnamed Defendants
because Plaintiff has failed to specifically identify them and
has not moved for discovery to uncover their names. Accordingly,
the Court will exercise its discretion and dismiss these unnamed
defendants. See, e.g., Macklin v. County of Camden, No. 15-7641,
2016 WL 3545520, at *6 (D.N.J. June 28, 2016) (dismissing John
Doe defendants because plaintiff neither served nor sought
discovery on the identity of the individuals within the time
period specified under Fed. R. Civ. P. 4(m), nor shown good
cause for noncompliance); Catlett v. N.J. State Police, No. 12-
153, 2015 WL 9272877, at *6 (D.N.J. Dec. 18, 2015) (Simandle,
J.) (dismissing John Doe defendants on same grounds).

    49.  For the reasons stated above, the Court will grant
Defendants' motion in part and deny Defendants' motion in part.
The Court will permit Plaintiff's LAD-based discrimination claim
against Phillips to proceed. All other claims against the
individual Defendants will be dismissed without prejudice. John
Does 1-100 and Jane Does 1-100 will also be dismissed from the
case. Defendant Reed Smith has not filed a motion to dismiss and
therefore all claims against them are still alive.

**B. Motion for Sanctions**

50.   Defendants filed a motion for sanctions against Plaintiff shortly after Plaintiff filed her initial Complaint, arguing that, among other things, her Complaint contained false and unsubstantiated allegations. [Docket Item 5.] Defendants filed a reply in support of their motion for sanctions after Plaintiff filed her Amended Complaint, maintaining that sanctions are appropriate because her Complaint still contained inaccuracies. [Docket Item 29.]

51.   Federal Rule of Civil Procedure 11 is "aimed at curbing abuses of the judicial system." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 397 (1990). Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986). Specifically, Rule 11 requires that an attorney or unrepresented party certify that any pleading, written motion, or other paper presented to the court is (1) "not being presented for any improper purpose" such as to harass or increase the costs of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and (3) the factual contentions have

26

evidentiary support or will likely have evidentiary support after investigation or discovery. If Rule 11(b) is violated, then Rule 11(c) permits the Court to impose sanctions, including reasonable expenses, attorneys' fees, fines, or other non-monetary penalties.[11]

52.   The "legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances," which means "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 77, 289 (3d Cir. 1991) (citations omitted).

53.   Defendants make several arguments in support of their motion for Rule 11 sanctions. First, they note that Plaintiff filed her Complaint despite the fact that her charges of discrimination had been dismissed by the Equal Employment Opportunity Commission ("EEOC"). They assert that Plaintiff's Complaint contains numerous "cut and pasted" allegations that were clearly false, "asserting nonsensical and absurd purported facts" "that do not relate to this matter under any interpretation." (Mot. for Sanctions [Docket Item 5-1], at 2.) They point out that although the Complaint names eleven

---

[11] ("the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory").

individuals as Defendants, the factual allegations make no
reference to nine of them, except for naming them as parties.
Finally, they complain that Plaintiffs ignored Defendants'
request to serve the summons and Complaint, and failed to
respond to Defendants' notice of frivolous pleading.

54.  The Court begins by noting that it has "significant
discretion" in determining what sanctions, if any, should be
imposed for a violation. Fed. R. Civ. P. 11, advisory committee
note; see also Grider v. Keystone Health Plan Cent., Inc., 580
F.3d 119, 146 n.28 (3d Cir. 2009). Moreover, Rule 11 sanctions
should be issued "only in the 'exceptional circumstance', where
a claim or motion is patently unmeritorious or frivolous."
Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191,
194 (3d Cir. 1988) (quoting Gaiardo v. Ethyl Corp., 835 F.2d
479, 483 (3d Cir. 1987)).

55.  Having reviewed Plaintiffs' Complaint and Defendants'
assertions, the Court does not find the circumstances so
exceptional as to warrant the imposition of sanctions.

56.  Defendants first note that Plaintiff had filed four
charges of discrimination with the EEOC, which the EEOC
"summarily dismissed under two dismissal notices," implying that
the EEOC's dismissal provides support for their case for
sanctions. (Mot. for Sanctions, at 1.) The Court does not agree.
Prior to the filing of a civil action under Title VII, a

28

claimant *must* file a charge of discrimination with the EEOC or equivalent state agency. See 42 U.S.C. § 2000e-5; see also Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001) (citing Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)). A plaintiff may bring a civil action only after receiving what is commonly called a "right to sue" letter from the EEOC, which the EEOC will provide if it decides not to pursue the claim. See 29 C.F.R. § 1601.28; Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999). Plaintiff filed her Complaint in this Court after receiving such a notice from the EEOC, and the Court will not penalize her for properly exhausting her remedies with the EEOC as required by statute.

57.   Moreover, as the Third Circuit has made clear, sanctions "do not automatically or usually follow an adverse judgment or ruling. Substantially more is required." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987). In this case, as the right to sue letter indicates, the EEOC's dismissal of a claimant's discrimination charge "does not certify that the respondent is in compliance with the [anti-discrimination] statutes." (EEOC Dismissal and Notice of Rights, [Docket Item 1-2].) The fact that the EEOC declined to pursue Plaintiff's claims means only that the EEOC was "unable to conclude" from "the information obtained" that a violation occurred; it does not raise an inference, as Defendants suggest, that Plaintiff's

29

claims were "patently unmeritorious or frivolous," or so untenable as to necessitate sanction. Cf. Components Corp. v. Sirenza Microdevices, Inc., No. 03-1851, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak.").

58.  Nor is the Court prepared to impose sanctions at this time because, as Defendants contend, certain allegations are false or unsupported, certain counts are duplicative or fall outside the statute of limitations, and allegations of wrongdoing are lacking against certain named Defendants.

59.  Although pro se litigants are not immune from such sanctions, see Unanue Casal v. Unanue Casal, 132 F.R.D. 146, 151 (D.N.J. 1989), aff'd, 898 F.2d 839 (3d Cir. 1990), this Court has noted that the standard for sanctions is "relaxed considerably when the offending party is unrepresented by counsel." Talley v. City of Atlantic City, No. 04-1146, 2007 WL 2021792, at *4 (D.N.J. July 10, 2007) (Simandle, J.). This is because pleadings by pro se plaintiffs must first be read "with greater latitude and liberality," and a pro se plaintiff "cannot reasonably be held to the same standards of knowledge of legal process as an attorney." Id.; see also Bacon v. Am. Fed. of State, Cnty., and Mun. Empls. Council, No. 13, 795 F.2d 33, 35

30

(7th Cir. 1986) ("A layman cannot be expected to realize as
quickly as a lawyer would that a legal position has no possible
merit, and it would be as cruel as it would be pointless to hold
laymen who cannot afford a lawyer . . . to a standard of care
that they cannot attain even with their best efforts."). 
Sanctions will be appropriate against a pro se plaintiff when
she persists in a hopeless cause after her claims have
repeatedly been rejected by court, because then, it should have
been clear to her as a reasonable (though not law-trained)
person that her cause was indeed hopeless. Talley, 2007 WL
2021792, at *4.

   60.  That is not the case here. Duplicative counts and
untimely claims are not uncommon in pleadings, and appear even
in pleadings prepared by seasoned attorneys. Merely by appearing
in a pro se Complaint, they do not merit the harsh punishment of
Rule 11 sanctions. With respect to factual inaccuracies,
Defendants cite only one specific example of a false allegation
in their motion for sanctions: Plaintiff's assertion that
Defendants "withdrew 'an agreed up accommodation for Plaintiff's
disabilities, transferring Plaintiff to an overnight shift,'"
even though Reed Smith does not have an overnight shift and
Plaintiff never worked an overnight shift. (Mot. to Dismiss, at
4.) Defendants themselves speculate that Plaintiff's "bizarre"
and "unsubstantiated" facts appeared to have been by "cut and

paste" from another document, and nothing suggests that these assertions were dishonest or made in bad faith. (Id.)

61.  In short, the Court does not find, at this time, that Plaintiff's Complaint constitutes an "abuse of the adversary system" that Rule 11 was designed to guard against. See Nesmith v. Martin Marietta Aerospace, 833 F.2d 1489, 1491 (11th Cir. 1987) (finding Rule 11 sanctions unwarranted, even when "[t]he evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law.").

62.  Finally, the fact that Plaintiff failed to timely serve process and failed to respond to Defendants' notice of frivolous pleading is hardly a basis to impose sanctions under Rule 11. The purpose of Rule 11 is to "discourage the filing of frivolous, unsupported, or unreasonable claims," Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002)

(citation omitted); it is not intended as a tool to punish parties every time they fail to comply with a rule of procedure. Moreover, it does not appear that Defendants suffered any prejudice from Plaintiff's lack of action. Although Plaintiff did not serve Defendants with the Complaint, it did not prevent Defendants from receiving prompt notice of Plaintiff's suit or from responding in a timely manner. In fact, according to Defendants' own motion, they learned of Plaintiff's lawsuit "through various sources" within a few days, and sent Plaintiff a communication regarding service of process a mere three days after the Complaint was filed, on November 19, 2015. Defendants on their own initiative then filed a notice of appearance in early January, waived service of process, and consented to the jurisdiction of this Court. (See First Mot. to Dismiss [Docket Item 4], at 2.)

63.   Courts in this district have repeatedly stated that Rule 11 should be reserved only for "exceptional circumstances." Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988); see also Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987) (stating same). Because those circumstances are absent here, the Court will decline to impose Rule 11 sanctions against Plaintiff. Defendants' motion will accordingly be denied.

\*\*\*

An accompanying order will be entered.


**August 24, 2016**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge